**1154**

Elizabeth SUTTON et al., Plaintiffs,

v.

The CITY OF HATTIESBURG et al.,
Defendants.

Civ. A. No. 72H–66(R).

United States District Court,
S. D. Mississippi,
Hattiesburg Division.

Nov. 30, 1973.

David M. Lipman, Oxford, Miss., Fred L. Banks, Jr., Jackson, Miss., Nathaniel R. Jones, James I. Meyerson, New York City, for plaintiff.

Moran M. Pope, Jr., Hattiesburg, Miss., for defendant.

OPINION OF THE COURT

DAN M. RUSSELL, Jr., Chief Judge.

Elizabeth Sutton, and three other named plaintiffs, who do not identify themselves as adults or minors, have brought this class action presumably on behalf of themselves and on behalf of all black and impoverished elementary school children residing in the City of Hattiesburg, Mississippi, who are discriminatorily required to walk long and hazardous distances to attend classes at schools to which they have been assigned in the dismantling of the previous dual school system. Defendants, as originally named, included the City of Hattiesburg, its mayor, the members of the city council, the municipal school board, its members, and the superintendent of the municipal school system. Upon the affidavit of the mayor that the municipal separate school district is created by statutes, and that the city owns no buses, is not engaged in the operations of any transportation system, promulgates no policies with respect to the operation of the school district, and has no authority over the same except in the appointment of school board members, the parties stipulated that the cause be dismissed as to the City of Hattiesburg and the named city officials, leaving only the school board and the superintendent as defendants.

Jurisdiction is based on 28 U.S.C. § 1343, and injunctive relief is sought under 42 U.S.C. § 1983.

In a joint pre-trial order entered in the record, the parties agreed that the sole issues are whether the school dis-

trict should be prohibited from discriminating against the black and poor residents in the municipality by requiring black and poor elementary school pupils to walk long and hazardous distances to the schools to which they have been assigned, and whether a mandatory injunction should issue to require the school district to provide free transportation to black and poor elementary school pupils who live more than one and a half miles from the school to which they are assigned. At first blush, the first issue might seem to involve requests for student re-assignments; however, that is not the case, as both parties agree that this action is wholly separate and apart from Cause No. 4706, styled U. S. A. v. State of Mississippi, in which the Hattiesburg Municipal Separate District effected a desegregation plan; [1] this action has not been consolidated with Cause No. 4706; and the parties agree that this action in no way seeks to interfere with the unitary school system, now in effect, or its pupil assignments. Moreover, plaintiffs, by way of their long-delayed brief and supplemental brief,[2] have limited the action to the second issue, i. e., "whether or not the defendant school district is legally and constitutionally bound to furnish free transportation to black and impoverished elementary school students who are required to attend schools a mile and a half or more from their respective homes, where to do otherwise places a disparate burden on them in the implementation of the plan effected."

Defendants in their answer deny that they are pursuing a policy of discrimination in requiring plaintiffs and their alleged class to walk long and hazardous distances to attend schools to which they have been assigned in order to dismantle the formerly dual school system, and deny that plaintiffs and their class are entitled to free transportation as a constitutional right.

It is undisputed that the outer boundary lines of the Hattiesburg school system are coterminous with the municipal boundary lines and that only elementary school children residing in the municipality attend municipal schools. The parties stipulated that the defendant school district does not now operate, and has never operated or provided transportation for any pupil in the district, and that there is no authority under Mississippi law for the operation of, or the providing for, transportation for any pupil in the district, except transportation directly related to, and a part of, school activities and the school educational program.[3]

The Court notes that this district receives no state aid for transportation, being limited under the provisions of Section 6336–04, Mississippi Code of 1942, which provides that no pupils who live within the corporate limits of a municipality and who are assigned to a school within the corporate limits shall be considered as eligible for transportation within the meaning of this Act. The Court further notes that the school district's budget for the school session, 1972–1973, has no provision in it for transportation, and that the total tax levy is 25 mills, the maximum levy permitted under state law.

At the hearing, the parties agreed on the introduction of several maps prepared by the Engineering Department of the City of Hattiesburg, one being of the City of Hattiesburg outlining the elementary school zones, and showing four cross-hatched areas, these areas encompassing the residences of children assigned to Davis, Camp, Woodley, and

---

1. No bussing was or is required under this plan.

2. This action was heard on January 24, 1973, following which plaintiff's counsel, due to personal difficulties, withdrew from the case. Substituted counsel, after numerous requests for additional time in which to submit briefs, has only done so recently.

3. The testimony of Mr. Sam Spinks, superintendent, showed that the district owns four buses used for athletic activities, band programs and field trips, but none for the transportation of students to and from schools on a daily basis.

Thames schools, who are allegedly required to travel at least one and a half miles to their respective schools. The parties agree that these four school areas are the only ones involved in the issue presented. On the district maps are red lines indicating the routes of travel the plaintiffs take from each of the cross-hatched areas to the respective schools, and blue lines, showing alternate routes in the Thames and Woodley school zones. Green lines depict bus routes of the Mississippi City Lines, a privately owned bus company which operates bus lines throughout the city, the fares for students being twenty cents each way. A map of each of the Davis, Camp, Woodley and Thames zones is included in the agreed upon exhibits. On each of these maps is a blue circle, representing a circumference with a radius of one mile and a half from its focal point, in each case the center of the circle being the school involved. Plaintiffs claim there are 15 students in the Woodley zone who travel 1.7 miles to reach the Woodley school; that there are 15 students in the Thames zone who travel 1.6 miles to reach the Thames school; that there are 48 students in the Camp zone who travel 1.5 miles to reach their school; and 73 in the Davis zone who travel 1.5 miles to reach the Davis school. The defendants conceded that the mileage to Woodley and Thames is correct, but deny the mileage claims of plaintiffs as to 48 students in the Camp zone and as to 73 students in the Davis zone.

Plaintiff put on 6 witnesses, black parents of students residing in the affected areas. Their testimony primarily concerned their inability to pay for transportation, whether by city bus, taxi or private car pools, and the hazards encountered by their children who walk to their respective schools. These hazards include railroad tracks, highways, underpasses and over-passes, city streets, and two bridges. Defendants' proof that all elementary students in the entire district face some or all of these hazards was uncontroverted.

As to the distances involved, Jimmy Watkins, administrative assistant to the superintendent, using an engineering measuring wheel furnished by the city engineer, walked the routes shown on the Davis school zone map and on the Camp school zone map. As to the former, he stated that he began at the residence of the furthest student assigned to the Davis school and walked a route to the school which measured 5,480 feet or 1.038 miles. He also measured an alternate route from and to the same points which measured 5,956 feet, or 1.107 miles. As to the Camp school zone, he again took the furthest residence from the school and measured to the school a distance of 5,805 feet or 1.099 miles. He stated that the routes he followed, as shown on the maps in evidence, were the normal routes used by the walking public. Jack Trigg, assistant chief of police in charge of traffic and training, and who has supervision of school crossing guards, demonstrated on the maps in evidence the route he took, driving a police car, in the Camp school zone. His speedometer read a distance of 1.15 miles. He similarly measured a route he took in the Davis school zone of 1.2 miles, and an alternate route in this same zone, measuring 1.1 miles. None of these distances, as measured, was controverted by plaintiffs, and the Court accepts them as true. Trigg also testified as to the location of school-crossing guards in each school zone, and, although plaintiffs have dropped their charge dealing with hazards, except as to those students living a mile and a half or more from their schools, he further testified that, notwithstanding hazards that exist in every zone, there have been no accidents or injuries to elementary school children in any recent school year.

The superintendent testified that the boundaries of the municipal school district are the same as municipal boundaries; that the elementary schools are all in contiguous zones, no student being assigned to a school outside the zone in which he resides; and that the school

district had never furnished transportation to and from school and does not now.

The defendants deny that plaintiffs are entitled to free transportation as a constitutional right or under the holdings of any cases involving bussing. While acknowledging that Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554, holds that bussing is a recognizable tool in accomplishing a unitary system, defendants here show that *Swann* also held that each school district is to be examined under its peculiar state of facts. Defendants point to these facts pertaining here: (1) the Hattiesburg school district has never had a transportation system for bussing students; (2) in effecting a unitary system in Cause No. 4706, bussing was not utilized nor required as a necessary tool in accomplishing a unitary system; (3) the neighborhood zone lines established for the elementary schools are contiguous, and no students are assigned to non-contiguous school zones. Also defendants claim that plaintiffs wholly failed to show that all or any considerable number of the students claimed as a part of plaintiff's class walk to school on a regular basis, but, in fact, many were shown to be availing themselves of transportation by way of car pools and the city buses; and failed to show that any of the purported class is required to attend a school out of his neighborhood, or is required to "pass by" a school closer to his home than the one he is assigned to. In support of this contention, the Court finds that only one witness for the plaintiff, residing in the Camp school zone, stated that her children would have gone to the Mary Bethune school but for their assignment to Camp. The Court, in this connection, notes that from the maps in evidence the Mary Bethune school appears closer to this resident than does the Camp school, but finds this was the only instance offered by plaintiffs to show that any of their class has been burdened with a longer traveling distance by reason of the unitary system, and further

finds that this parent resides within a mile and a half of the Camp school. Defendants finally insist that plaintiffs have wholly failed to establish any constitutional right to transportation based on distance, in this case, one and a half miles or more, a distance arbitrarily selected by plaintiffs, with no showing of what is a reasonable distance, defendants contending that a distance of 1.6 miles or 1.7 miles is not unreasonable. Defendants, aware of plaintiffs' reliance on the mandate issued by the Fifth Circuit Court of Appeals on July 16, 1973, in Quarles v. Oxford Municipal Separate School District, 487 F.2d 824, wherein the Appellate Court directed the district court to require the Oxford municipal school district to furnish free transportation to all elementary students, black and white, who live more than one and a half miles from their assigned schools and who require such transportation, point out significant factual differences between the Oxford municipal school system and the defendant district here. E. g., (1) the Oxford suit was filed as a part of the original desegregation suit; (2) the Oxford district included 90 square miles outside the city limits; (3) the Oxford district had traditionally provided transportation for students eligible under state statutes to receive transportation; (4) the Oxford district had and has an established bus transportation system within the district, whereas the Hattiesburg district has none; (5) in the Oxford desegregation efforts two elementary schools were paired; thus the two schools served the entire district, whereas Hattiesburg utilizes a zone or neighborhood system for its elementary grades; (6) in the Oxford case, 418 students in the two elementary schools were shown to reside more than one and a half miles from their assigned schools, whereas in Hattiesburg, only 30 students out of 7000 enrolled, live more than a mile and a half from their schools, and (7) the Oxford schools were not shown to have a public transportation system available to school children, whereas in Hattiesburg there is a pri-

vately owned bus line serving every area of Hattiesburg.

These differences are of even more significance in view of the fact that the Appellate Court has very recently reversed its own mandate in the Oxford case and found that the Oxford school board is not required to furnish free bus service in order to comply with its desegregation order, further finding that bussing is not necessary in the sense that the desegregation plan will fail without it.[4] Similarly, plaintiffs here have wholly failed to prove that the Hattiesburg school district integration plan is in any measure failing because of lack of bussing for 30 students.

Plaintiffs' reliance on United States v. Greenwood Municipal Separate School District, 5 Cir., 460 F.2d 1205, and Henry, et al. v. Clarksdale Municipal Separate School District, U. S. Court of Appeals for the Fifth Circuit, 480 F.2d 583, is also of no avail. In both cases the integration student assignment plans provided for the assignment of students to schools outside their neighborhood schools. Bussing was required to effectuate these assignments.

In Hattiesburg, where bussing has never been utilized by the school board, a unitary school plan was effected by the use of zones, with an elementary school in each zone having the full complement of elementary grades, and no student is assigned to a school outside or noncontiguous to the zone in which he resides. This plan has thrown no burden on plaintiffs here such as that complained of in the Greenwood and Clarksdale systems.

The Court finds, under the circumstances of this case, that plaintiffs do not have a constitutional right to free bus transportation to elementary schools located within the zones wherein plaintiffs reside. Further they have failed to offer any evidentiary proof that they are carrying any greater burden now than before the desegregation plan became effective. As stated in the recent slip opinion in the Oxford school case, free transportation is required in implementing a desegregation plan to offset any significant increase in travel requirements falling on one race or the other as a result of the plan. In the Hattiesburg school system, as stated above, transportation was not required in effecting integrated schools, and this Court does not find that the desegregation plan has caused any significant increase in travel for any students that has not been offset by shorter distances for others. Accordingly, the Court finds the petition should be dismissed.

An appropriate order may be submitted, with costs of court taxed to the plaintiffs.

---

4. Quarles v. Oxford Municipal Separate School District, 487 F.2d 824, dated November 9, 1973.